Turner v. Thomas, Mr. LaPierre. Did I get that right? Yes, Your Honor. Thank you, Your Honor. May it please the Court, my name is Dallas LaPierre. I'm here on behalf of the appellant, Mr. Turner. I'm here today to ask this Court to overturn the District Court's dismissal of this case because the District Court erred in failing to apply the considered true facts at this litigation stage to the proper stated of review. If Your Honors will permit, I have three main points I want to make and then I'm open to taking any concerns you may have. The three main points I want to make today, Your Honors, is that one, the state-created danger doctrine is clearly established law in this circuit. In this case, it's not a case of a bad guess in the gray area. This is a case where considered true facts at this litigation stage plausibly suggest an intentional act for the purpose of creating or enhancing the danger faced by Mr. Thomas. And if Your Honors find that the considered true facts plausibly suggest an intentional act, the clearly established state-created danger doctrine provided the appellees, Chief Thomas and Colonel Flaherty, fair warning of the unlawfulness of their acts. With those points made, this matter has been fully briefed and I'm prepared to address any concerns Your Honors may have. So what are the two factors that lead you to believe that the state-created danger? Your Honor, the first thing we have to have is an intentional act. In this case, we believe the facts plausibly suggest that the appellants did in fact issue a stand-down order. That order did interfere with otherwise available police protection and therefore enhanced the danger faced by Mr. Turner. And that enhanced danger did in fact cause his injury when he was assaulted by the white nationalist Unite the Right rally protesters. Can you explain to me how can a decision not to act be the relevant affirmative act under this doctrine? Wouldn't that sort of swallow the whole rule whenever a state actor doesn't act? There's a decision not to act. And Your Honor, I believe that the point here is not that the appellants, I'm sorry, did not act. It's that they affirmatively acted to interfere with the protection that would otherwise have been available from the other officers under the plans that had been an order not to act. Again, Your Honor, it's not a matter of the fact that the others didn't act. Our position is that the order to not act, the order that prevented the otherwise available protection is an affirmative act that did enhance the danger. I don't understand that. The fact that sort of a higher up supervisor made the decision seems very relevant to something like a Monell claim. But when the question is whether this is action or inaction, I don't understand why it matters who makes the decision not to act. Again, Your Honor, it's akin to looking at the situation as if had the appellees in their anger at the district court's decision to permit the rally to go forward in Emancipation Park simply walked away and done nothing, the officers on the scene would have carried out their statutory responsibility in protecting the life of the individuals at the rally in accordance with the previously existing plans to provide for the protection of the individuals at the rally. But I think, I think a very good one is that line officers in a police department operate only in really two main ways, right? They operate due to delegated discretion from their supervisors or according to instructions from their supervisors. And so we all agree, and I understand you're admitting, that if the line officer was at the park and simply decided, you know, because of danger, because I want to go have a donut, or for whatever reason chose not to intervene, you agree that that would not get you over the hump, right? You have to. Your Honor, I'm not sure of all the factors around that. If it was just a case of... All right, well let's assume for the hypothetical that you you will concede that, or that we will find that. But the next order question is, is, I don't know, what I'm having trouble understanding, and I think Judge Harris's question is, why that's different if the supervisor calls him and says, for whatever reason, the same reason, I want you to go get a donut, or for any other reason, I want you to not take action. It's hard for me to understand how that creates the state affirmative, or the state-created danger. In this case, Your Honor, again, it is the intentional act. And again, constitutional torts are intentional torts. It's the intentional act of the appellees in issuing the state of the order for the purpose of creating and enhancing the danger, so that they can get the rallies moved and the emergency declared, that is actually the intentional torts. Well, isn't this... It seems like we had this exact same question in Doe, where the alleged action was sort of the failure to report the abuse in the school or the camp, I can't remember, and the plaintiffs tried to characterize that failure to report as the affirmative act of issuing an order to hold the information close. And we said, you can't do that. It doesn't matter that someone else ordered the person not to turn over the information. At the end of the day, what we were talking about is a failure to act. So can you distinguish Doe for me? Yes, Your Honor. The difference is that in this case, there was affirmative actions taken by the police departments in order to provide protection. It was taken by Chief Thomas and Colonel Flaherty as part of a unified plan to provide for protective services at that rally. And that was in process. Had they simply done nothing, Colonel Flaherty and Chief Thomas, then the protection would have been provided per that plan and per the state statutory responsibility of the police department. So they acted with the intent to create their enhanced danger in issuing a stand-down order for the purpose of enhancing that danger, which did enhance the danger and did resolve in Mr. Turner's injuries at that time. The reverse might be true too, that if you have a stand-down order, you don't have a confrontation with police and the crowd. And there may be a logical reason to have a stand-down order. Yes, Your Honor. That's exactly why we actually discovered in this case. And you can look at, and I know we're looking outside of this particular circuit, but there is a case that has a very similar set of fact patterns as to what Your Honor is suggesting. And that would be the city of Seattle v. Johnson case. And in that case, there was an issue of a stand-down order that was issued by the city of Seattle police during a rally at Washington Square Park. And while that did survive the motion to dismiss stage because it did plausibly suggest the state created danger in the police in that case had actually responded to a changing circumstances and issued that order for the purpose of preventing the danger and preventing additional violence. And that's a situation where the facts that are discovered in discovery may indicate that this case is resolved on the summary judgment age. But we have plausibly suggested that the stand-down order was an affirmative act that did enhance the danger that Mr. Turner faced that did result in his injury, just as in the city of Seattle case. Well, under your theory, would anyone that was harmed at the rally be able to have a claim against it, I believe? No, Your Honor. You are going to need a few additional facts. Some of the facts, for instance, that were alleged and plausibly suggest that the enhanced danger was the result of the injury in our case. For instance, they have to be within the park itself. They have to have been in the presence of police officers. These are all the kinds of factors that we have that at not knowing the additional facts within that particular hypothetical, Your Honor, I would not believe just anybody at the park would have that claim. Can I ask about that, just the scope of your appeal? You're not appealing the dismissal of your Monell claim or the supervisory liability claim, right? I believe actually, Your Honor, we are. Where do I find that? The district court found that in the supervisory claim that it failed, that while the supervisory claim was clearly established, it failed because the underlying constitutional claim failed. So, if that's overturned, obviously, the supervisory claim would be revised. The same would be true of the Monell claim. The district court dismissed it because the underlying... I'll find this in your brief somewhere because I didn't see it. I don't have that in front of me, Your Honor. I believe it is in there, but I can't speak to a specific page. Okay. Anything further? If Your Honor has no more questions. All right, thank you. Good morning, Your Honors, and may it please the Court, Michelle Callan for Defendant Appellee Stephen Flaherty. The Due Process Clause protects people from each other, and that's the line between inaction... That's where the line between inaction and action is also important in the State Created Danger Doctrine, and I think this Court has highlighted the importance of an actual action in the State Created Danger Doctrine and has cautions against artful recharacterization of what is essentially inaction into action by going to a higher level of responsibility, such as here, trying to go from the events on the ground to a level of a stand-down order or an instruction not to act. That does not transform what is on the ground, inaction, into action. And for that reason, on the merits, the constitutional claim here fails. But in addition to that, in order to succeed... Can you help us just trying to think about the distinction the Court explains in Doe, and we've discussed a little bit this morning, that you can't turn an inaction into action by recharacterizing it. But can you give us any sort of guidance on how to think about that, particularly in a supervisory context, which I understand their argument to be? Of course, Your Honor. I think the cases in which a State Created Danger have actually been found are ones in which individuals affirmatively conspire to aid the individuals who ultimately are the ones who commit the assault at issue. So in the Robinson v. Leoi case, for example, the authorities there were actively texting the assailant and lying about the existence of an arrest warrant. So if there's an instruction... For example, if in Robinson there was an instruction by the supervisor to say, please text this assailant or please lie about this inaction, that can transform something into a State Created Danger. So in that example you give, the action would be texting the defendant or assailant. That's correct, because there is the action, the interaction between the officials and the ultimate assailant is an activity. It's not a failure to act. And so an instruction to engage in that activity, likewise, could impute that sort of responsibility. Here, there's just an instruction to do what DeShaney holds as constitutional, and that doesn't jump the line between action and inaction. But in terms of qualified immunity, too, there's the second step of establishing that the right at issue is clearly established. And I think that the cases that my friend on the other side relies on in his brief highlight precisely why, to the extent this Court is inclined to conclude there's any sort of constitutional violation here, and for the reasons set forth in our brief, this isn't, our view is that that isn't that case. But to the extent this Court is inclined to go in that direction, my friend on the other side relies on five cases, and those cases highlight precisely why that right is not clearly established here. Three of the five cases on which my friend on the other side relies hold that there is, there was no constitutional violation at all, and that's the DeShaney case, Pinder, and the Johnson case from the Ninth Circuit that he discussed during oral argument as well. Those cases ultimately found no state-created danger, and so those cases can't establish a clearly established right in this circuit. The other cases on which he relies are Robinson versus Leo I in the Fourth Circuit, but this Court has been clear that courts shouldn't even consider unpublished cases when it whether or not a right is clearly established. And the final case on which he relies is the Duarez case out of the Second Circuit, and a single... Sorry, can I bring you back to the Robinson case? Is that your argument on Robinson, that it's because it's on, I mean, do you think Robinson governs this case otherwise? Had it been published, let's talk hypothetically, if Robinson were published, would that be a problem for you? No, Your Honor, it's distinguishable on the facts as well. Robinson is a case in which there was an active conspiracy between the state officials and the assailant. They were texting, the police officers were texting the assailant to help him evade arrest and lied about the existence of a warrant, and that's the sort of activity that sets forth the difference between inaction and action. And likewise, the Duarez case out of the Second Circuit is distinguished... What if it was just a conspiracy? So if you took the action away, so they didn't text the folks, but in this scenario, hypothetically, obviously these aren't the facts, but if they had just conspired, so in other words, the rallies organizer had gotten together with the police chief and they had agreed, someone could say conspired, that they would not intervene, right? And so they reached an agreement to not act, which I guess you would call a conspiracy to not act. Would that make any difference? I don't think so, Your Honor, and the reason is because the question is with whom is the conspiracy? So in Robinson, the conspiracy is with the assailant. And here it's with the organizer, right? I mean, that's, you know, the organizer of the rally and the police chief who is, in a sense, the Robinson version of the person trying to evade arrest, right? Understood, Your Honor, but in that circumstance, that is materially different, and that's exactly, that's the sort of circumstance that would bring a case like that more in line with Robinson and Duarez, where there is an active conspiracy with the ultimate assailant. And so the conversations to say, we're not going to intervene, or this is our plan, and expressing that plan to only one side is something much closer to the line of activity as opposed to inactivity. And in both Duarez and Duarez, there is a conspiracy with the assailants, and that's what precisely differentiates this case from those cases. This case is up here in front of us on a motion to dismiss. Could you comment on your opponent's pleading plausibility argument? Of course, Your Honor. I think that's where it's important to keep qualified immunity in mind. Qualified immunity is an immunity from suit, and so to the extent my friend on the other side is looking for discovery, he has to be able to overcome both prongs of the qualified immunity analysis. And this Court hasn't hesitated to grant qualified immunity at the motion to dismiss stage. In fact, it did it in Adam's Ferguson case just last year. But isn't it even, I mean, you don't have to get to that point either, right? I mean, you will take the facts as alleged in the complaint and say that all they've alleged is inaction. Correct, Your Honor. So we think this case fails for two reasons. One, on the merits, and also for qualified immunity on the clearly established, on both prongs of the qualified immunity analysis. Unless the Court has any additional questions. Thank you very much. Thank you, Your Honors. Mr. Corrigan. Thank you, Your Honor. David Corrigan here on behalf of Charlottesville Chief of Police, former Charlottesville Chief of Police Al Thomas. I have a whole argument ready to argue, but everything's kind of been addressed. I'm just going to address a couple things that have been mentioned. The Robinson versus Leoe unpublished opinion, which of course is not to be considered, but it is kind of been mentioned. I would argue that Officer Leoe in that case did six separate things. He had possession of a warrant. He withheld it from the domestic violence unit that was supposed to serve it. He warned the husband about the warrant. He sent the husband text messages. He refused to serve and arrest the husband, and he claimed falsely that he couldn't find the warrant. And that was enough for that non-published opinion to say that was action at that stage. That case is now on appeal, because on summary judgment, it was found that those facts apparently weren't all accurate and in place. Very different. A lot more action there. We're talking about a spectrum from in action to action. We're very closely in action here. I mean, all that was done, all that's been alleged, is this standout order. And that's, as Judge Harris said, that is a decision not to act. And the decision not to act cannot be action. And so that really is the reason we win. The second reason we win obviously is the qualified immunity. And the best you can do is that Seattle case, on the Seattle case, they had passive policing. That was the decision, was to have passive policing, which is what you argue here is what happened. And in that case, they found that it was not a state-created danger to do that. So if you're Chief Thomas and you've read the Seattle case, you're not thinking that if we use this method, that we're violating anybody's constitutional rights. That case tells you that you're not violating their constitutional rights. So I think for those reasons, there is no constitutional claim stated, and clearly there's qualified immunity for all the defendants. Thank you. All right, thank you. Mr. Miller? Thank you. In response to Judge Harris's question on the Monell claim, we're not sure what it was. Counsel for Mr. Turner couldn't point to the spot in the brief where they raised it, and we pointed out on pages 25 and 26 on our brief, they didn't address it in this court, in their opening brief, and even in the reply brief, although they were required to in their opening brief. They didn't address it in their statement of issues pursuant to Federal Procedure 28. It's abandoned and waived, and the case is cited. But also, in context, when we go back, and I'd ask Mr. Turner's counsel, and they did include it in the appendix, we had at the motion to dismiss stage, which I believe is at page 107 in the joint appendix, we filed motions to dismiss and we filed briefs in support, and the city moved to dismiss the Monell claim. And in response to the motion to dismiss by the state, by Mr. Thomas, and the city, Mr. Turner filed a joint brief. However, he had a footnote, one in the caption, said, this is a consolidated brief, but I'm not going to go forward on the city, and that'll be some other day or something. All right, thank you, sir. Maybe he might amend in the future, which he never did. And then, so then, we come to the oral argument on March 2nd, 2018, and at page 178 in the joint appendix, Mr. LaPierre, after hearing my argument, responded to Judge Moon and said, quite frankly, about the Monell thing, so we have dropped that one. Hearing that and having what they said in their brief, hearing that's what they told Judge Moon, and then it not being in their brief and argued and on their issues, we take the position it's abandoned. And as a matter of fact, Judge Moon did go ahead and rule on it, and for the reasons stated by counsel on our side, Ms. Callan and Mr. Corrigan, prong one and prong two of qualified immunity, prong one applying, of course, potentially to the city, the plaintiff failed to state a plausible claim based on Doe 2 and Pender of a state-created danger. Mr. Miller, your time's up. Thank you very much. Mr. LaPierre. Thank you, Your Honor. Briefly, I just want to state that initially, initially, we are relying on the Pender case and the DeShaney case. Those are the cases which we believe control in this case. And as the Pender case states, Your Honor, this court took the Pender case to clearly delineate the contours of the state-created danger doctrine. And that case stated that the state, whenever they do commit an affirmative act that creates or enhances a danger to an individual who is injured by that danger, has fallen into the state-created danger doctrine. I'm not sure it's dispositive, but maybe you want to address in terms of qualified immunity. Am I right that there is no case from the circuit ever finding that the facts put a case within the state-created danger doctrine? Is there any case in which this court has found that, yes, on these facts, the state actors created the danger? There's the Leoy case. Well, that's the one where they just said you get passed a motion to dismiss. Oh, I'm sorry, Your Honor. Do you mean, is there a case where they've actually at trial found it? Yes. Has any, has any government actor in this circuit ever been held liable under this doctrine? Not that I'm aware of, Your Honor, but I just don't know if there's been a trial decision on that issue. So it is sort of, I'm not sure it's dispositive, but in terms of qualified immunity, there's the one unpublished case saying you can get passed a motion to dismiss and that's it. I mean, there's not a lot out there. Your Honor, I think in the qualified immunity is that while you don't have to have a case directly on point, you just have to have a case sufficient to, to provide fair warning as to the contours of the law. And I think the Pender case that this court ruled on. And in the Pender case, they said it's not a state created danger. I just, I'm trying to sort of, if you put yourself in the shoes of a reasonable public official, all they really know is, as far as I can tell, no one ever gets tagged under this doctrine, so. And while there may have been in that case, no finding that they were liable under state created danger, they did find that that doctrine does exist. And that when you do affirmatively act to enhance a danger that you, does cause an injury, you have violated it. And in this case, Your Honor, the considered true facts possibly suggest they did commit an affirmative act. There were police presence available as part of a unified effort by the New York State Police, the City of Charlottesville Police, EMS Fire Department. They were going forward to provide protection. That was put in place. There were advanced plans to provide control of the park, separation of the park, and that was not going to go forward. Once Chief Thomas and Colonel Flurry made that decision, they then acted to issue a stand down order, interfere with that otherwise available protection. And the fact that they had done that was communicated to the protesters and to the head of the United Bright Valley, Jason Kessler. Falling very close into the Leoy kind of situation, they took multiple acts in deference of their decision not to permit this otherwise available police protection to occur. And they did communicate that back to the counter, I'm sorry, to the protesters who did then violently assault multiple counter protesters, including Mr. Turner. So it's far from being a case where they just decided that they weren't going to act. Had Chief Thomas and Colonel Flurry decided they simply weren't going to act and walked away from the command center, the otherwise available police protection would have been in place. And at least, plausibly suggests that they would have intervened to prevent the injury Mr. Turner suffered. Again, Your Honor, by interfering with the police protection, by ordering that they stand down, by communicating that and having that communicated to the protesters, I believe this case is well beyond simply a failure to intervene. Any other questions? All right. Thank you very much. We'll come down and greet counsel and move to our second case.
judges: Henry F. Floyd, Pamela A. Harris, Julius N. Richardson